UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL RACINE, as successor to CALIFORNIA
WINDOW COVERINGS, INC.,

       Plaintiff,                       CIVIL ACTION NO. 03 CV 40300 FL

      v.                              DISTRICT JUDGE PAUL V. GADOLA

AMERICAN BLIND AND              MAGISTRATE JUDGE VIRGINIA MORGAN
WALLPAPER FACTORY, INC.,

       Defendant.
_____/

## REPORT AND RECOMMENDATION DENYING MOTION FOR SANCTIONS

This matter is before the court on defendant's Post-Judgment Motion for Sanctions pursuant to 28 U.S. C. §1927, and plaintiff's response which includes a Cross Motion for Sanctions. This case arises from a commercial dispute between a seller of window blinds (American Blind and Wallpaper Factory [ABWF]) and its now bankrupt supplier (California Window Covering Inc [CWC Inc]). On or about September 29, 2006, the district court granted summary judgment to defendant, finding that plaintiff Racine did not have standing to pursue the claim on behalf of his company, a defense not previously raised by defendant.[1] Defendant now

---

[1] That determination is pending before the district judge on a motion for reconsideration and clarification.  (See D/E 61, 63)

-1-

seeks at least $73,000 as a sanction for having to defend the case.² Plaintiff seeks sanctions for the filing of this motion, arguing that it is misguided and baseless. The matter was referred to the undersigned for hearing and determination. However, because this is a post judgment matter, the court's authority is limited–in the absence of the parties' consent–to a Report and Recommendation. For the reasons discussed in this Report, it is recommended that no sanctions be imposed.

*Basis for Sanctions*

This is not a claim for sanctions under FRCP Rule 11 for bringing a frivolous action. Rather, defendant seeks sanctions against plaintiff's counsel pursuant to 28 U.S.C. §1927. That statute provides that a court may impose sanctions on an attorney who knowingly engages in conduct that vexatiously and needlessly multiplies the pleadings. The statute imposes an objective standard of conduct on attorneys. Salkil v. Mount Sterling Twp Police, 458 F.3d 520 (6th Cir 2006). Defendant contends that pursuing claims without evidentiary support amounts to violation of this statute, relying on Ridder v. City of Springfield, 109 F.3d 288 (6th Cir. 1997). Defendant claims that plaintiff's counsel's failure to make a proper inquiry regarding his client's standing to pursue the claims is such an abuse.³ Plaintiff's counsel submits that his client's standing is proper. He is an assignee of a secured creditor and seeks to collect $128,000 owed to

---

²Defendant states in the motion that a Bill of Costs and more information regarding fees would be filed if the motion were granted. However, it appears that a Bill of Costs in the amount of $2907.68 was filed by ABWF on October 13, 2006. (D/E 62)

³It should be noted that defendant did not raise the standing issue until more than two years into the litigation. Thereafter, plaintiff's pleadings were only a response to the motion before the court ruled.

the corporation by defendant. He contends that he has suffered an injury that is fairly traceable to the defendant's allegedly unlawful conduct, thus giving him standing. See, Akella v. Michigan Dept of State Police, 67 F.Supp. 716 (E.D. MI 1999). Further, plaintiff argues that, at a minimum, he has standing to pursue the claim at least to the extent of the outstanding bank loan balance, approximately $96,000.

*Background*

The facts of the underlying transaction were found by the district judge in the Order Granting Summary Judgment. (D/E 59) Plaintiff Earl Racine was the sole owner of California Window Coverings, Inc.. (CWC Inc.) which manufactured and sold window blinds to defendant American Blind and Wallpaper Factory Inc. (ABWF). The companies had done business since approximately 1991. In May 2001, Racine, through CWC Inc., formed a new company with one of his employees Steve Frankel. The new company was CWC, LLC and all of the assets and liabilities of CWC Inc. were transferred to the new entity. A month later, the new LLC obtained a loan from Union Bank of California (Bank) in the amount of $150,000. This loan was personally guaranteed by Mr. Racine. The LLC granted the Bank a security interest in the following property:

> All present and hereafter acquired personal property including but not limited to all accounts, chattel paper, instruments, contract rights, general intangibles, goods, equipment, inventory, documents, certificates of title, deposit accounts, returned or repossessed goods, fixtures, farm products, poultry, livestock, crops, timber, minerals (including oil and gas) and mineral rights, commercial tort claims, insurance claims, rights, and policies, letter of credit rights, investment property, supporting obligations, and the proceeds, products, parts accessories, attachments,

> accessions, replacements, substitutions, additions, and
> improvements of or to each of the foregoing. Said personal
> property is hereafter referred to as the 'Collateral.'

In 2002, ABWF sent a notice to CWC Inc. informing it of ABWF's desire to terminate the business relationship. CWC Inc. thereafter refused to pay the balance of its account with ABWF ($74,640), claiming that ABWF owed it approximately $128,000 for unpaid invoices for goods previously shipped and that it held hundreds of thousands of dollars of specialized inventory for use with ABWF work and that such inventory could not be utilized elsewhere. (Dep. Racine, D/E 61, p.3) ABWF sued CWC Inc. in May 2002. Also in May, 2002, CWC LLC defaulted on the loan to the bank. Due to its financial difficulties, CWC LLC made an assignment for the benefit of all creditors on October 24, 2002. It assigned, under state law, all of its property, assets, and rights to an assignee David Blonder (Assignee). The assignment agreement stated that CWC LLC did:

> grant, assign, bargain, sell and transfer to Assignee, his successors
> and assigns, in trust for the benefit of all the Assignor's creditors
> generally, including all of the property and assets of the Assignor
> of every kind and nature and whatsoever situated, whether in
> possession, reversion, remainder or expectancy, both real and
> personal, and any interest or equity therein not exempt from the
> enforcement of a money judgment; including therein all inventory,
> merchandise, furniture, fixtures, machinery, equipment, raw
> materials, work in process, books, records, accounts receivable,
> cash on hand, bank accounts, all choses in action, insurance
> policies, and all other property of every kind and nature owned by
> the Assignor, or in which Assignor has an interest, and without
> limiting the generality of the foregoing, including all of the assets
> pertaining to that certain manufacturer and distributor of window
> coverings known as California Window Coverings, LLC.

Blonder liquidated most of the property but did not pursue any legal action for amounts due to CWC LLC. In February, 2003, CWC Inc. filed for bankruptcy under Chapter 7 and its assets were liquidated. On March 21, 2003 Racine purchased from the Bank the security interest that the Bank had in CWC LLC. At the time of the purchase, the Bank's security interest was $96,937.65, the amount owed to the Bank by CWC, LLC. On October 16, 2003, Racine filed this action, asserting the claimed causes of action on behalf of CWC Inc. Over two years later, on January 12, 2006, defendant ABWF filed a motion for summary judgment, alleging for the first time that Racine did not have standing to pursue the claims. The district judge granted the motion on September 29, 2006.

*Pending Motion for Reconsideration/Clarification*

On October 11, 2006, the plaintiff filed for reconsideration and/or clarification. First, Racine argues that by the terms of the Order, the court concedes that Racine's interest is valid to the extent of the $96,937.65 unpaid loan balance. Thus, he would have standing, at least as to this portion of the claims and the case should not be dismissed in its entirety. [This would result in a denial of the instant motion.] Second, the court's conclusion that Blonder is the proper plaintiff renders defendant's belated defense of lack of standing highly prejudicial, in that discovery could have been directed to that issue and/or Blonder added as a plaintiff. [This would also result in a denial of sanctions for vexatiously and needlessly multiplying the litigation as it was not raised by defendant early on.] Third, plaintiff argues that the court may have erred in that it did not address the basic rule that an Assignee for the Benefit of Creditors (ABC) takes subject to security interests. The Bank's security interest granted in the loan documents and

-5-

assigned to Racine is sufficiently broad to provide Racine with standing to pursue the entirety of the claims, not just the unpaid balance, as he acquired the claims through a valid assignment of the Bank's security interest covering the rights and assets of the CWC Inc. [This also would result in denial of the instant motion.]

*Analysis*

This case presents a fascinating legal issue; indeed, almost a bar exam or law school question with respect to the law of federal jurisdiction, corporations, secured transactions, creditors rights, and bankruptcy law.

First, it should be noted that the doctrine of standing is a limitation on the federal court's case and controversy requirement of Article III of the Constitution. See Raines v. Byrd, 521 U.S. 811, 820 n. 3 (1997). Professor Paul Freund has described the problem of standing as "among the most amorphous in the entire domain of public law." See, Nowak and Rotunda, Constitutional Law, 4th Ed. § 2.12, p. 71.

Whether a party has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issue is the gist of the question of federal standing, and is , of course, a question of federal law. Baker v. Carr, 369 U.S. 186 (1962), on remand to 206 F.Supp. 341 (M.D. TN 1962). Constitutional standing is generally held not to be subject to waiver. See, Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). There, the Supreme Court outlined traditional standing requirements and noted that it is burden of the party seeking to invoke federal jurisdiction to establish standing. Aa party must show (1) an injury in fact to the plaintiff, (2) causation fairly traceable to the complaint of

conduct by defendant, and (3) redressability, a likelihood that the injury they have suffered will be redressed by a favorable outcome to the litigation. Id. at 560-562; Steel Co. V. Citizens for a Better Environment, 523 U.S. 3, 102-104 (1998). In this case, Mr. Racine argues that his injury (defendant's failure to pay $128,000) will be redressed by a favorable outcome to the litigation and that he is asserting his own legal rights and interests.

Also, it should be recognized that an assignment for the benefit of creditors (ABC) is a business liquidation device available to an insolvent debtor as an alternative to formal bankruptcy proceedings. Credit Managers Assn. v. National Independent Business Alliance, 162 Cal. App. 3d 1166 (2d Dist. 1984). Unlike federal bankruptcy proceedings, ABCs originated at common law but are now governed by state law in most cases. See, Kupetz, Assignment for the Benefit of Creditors: Exit Vehicle of Choice for Many Dot-com, Technology, and other Troubled Enterprises, 11 J. Bankr. L. & Prac 71 ( 2001) (hereinafter Kupetz). In California, where this case arose, the California Civil Code §§22.2, 493.010, and 3439.07 et. seq. provide guidance. Id. at 71-73. Secured creditors retain their liens on the collateral and are entitled to receive the proceeds from the sale of their collateral up to the extent of the amount of their claim. Kupetz at 80-81. Thus the Bank, and consequently an assignee such as Racine, would have a lien on the collateral.

It is settled law that the rights of a secured party (in this case The Bank) with an antecedent perfected security interest are never conveyed to an Assignee for the Benefit of Creditors (in this case, Blonder). See, Fletcher: 15A Cyclopedia of the Law of Corporations, §7381 (attached); Byczek v. Boelter Companies, Inc. 230 F. Supp.2d 843 (ND IL 2002);

Farmers & Merchants Nat Bank of Hagerstown v. Schlossberg, 306 Md. 48, 507 A.2d 172 (1985)). Thus, it is only the equity of the debtor in the collateral, if any, that is part of the fiduciary estate available for distribution to the Assignee for the Benefit of Creditors.

An antecedent security interest is, of course, one that comes into being before the ABC. Here, the Bank's interest is antecedent as it was created in 2001 when the loan was made. The Assignment for the Benefit of Creditors was not created until 2002. A perfected security interest is one which is protected as far as the law permits, against competing claims to the collateral. See, IN RE Kenneth Cook: Rogan v. Bank One, National Association, 457 F3d 561 (6th Cir. 2006). There does not appear to be a dispute in this regard. The Bank retained its security interest, which it subsequently assigned to Racine. Mr. Racine, having purchased the Bank's security interest, is at least arguably the proper person to collect the debt. See, Byczek v. The Boelter Companies, 230 F. Supp.2d 843 (ND IL 2002); see also, Liu v. T&H Mach, Inc., 191 F.3d 790, 797-98 (7th Cir. 1999). As such, the defendant's delay in raising the standing issue (even if the court found that plaintiff did not meet his burden to establish the same) severely prejudiced plaintiff who could have joined Blonder and/or conducted discovery bearing on the issue of his standing and/or the Bank's security interest.

Be that as it may, clearly, this complex and difficult factual and legal issue is not at all grounds for a motion for sanctions. Neither plaintiff nor plaintiff's counsel pursued frivolous claims nor did either vexatiously and needlessly multiply the proceedings. Failure to recognize that Racine may have lacked standing was not unreasonable nor did it constitute egregious

misconduct.  <u>Salkil v. Mount Sterling Twp Police</u>, 458 F.3d 520, 532 (6th Cir 2006).  Thus, it is recommended that the motion be denied.

While sanctions could be imposed against defendant for bringing this motion, the court is of the opinion that the award would create additional satellite litigation and encourage frivolous filings.  Thus, it is recommended that both motions be denied.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                       S/Virginia M. Morgan
                                       United States Magistrate Judge

Dated: January 17, 2007

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 17, 2007.

                                       s/Jane Johnson
                                       Case Manager to
                                       Magistrate Judge Virginia M. Morgan